# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JIMMY KINSLOW,

                    Plaintiff,

            v.                                              CV 05-1324 JH/WPL

JOE WILLIAMS, ET AL.,

                    Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Jimmy Kinslow filed this civil rights suit against several officials affiliated with the New Mexico Corrections Department (the NMCD Defendants), several other officials affiliated with the Illinois Department of Corrections (the IDOC Defendants), and Partha Ghosh, the Medical Director of the Stateville Correctional Center (SCC) in Illinois.[1]  The matter is before me now on the IDOC Defendants' motion to dismiss based on a lack of personal jurisdiction and Ghosh's motion for summary judgment based on collateral estoppel.  For the reasons explained below, I recommend that the IDOC Defendants' motion to dismiss be denied and that Ghosh's motion for summary judgment be granted in part and denied in part.

---

[1] The NMCD Defendants are: Joe Williams, Secretary of Corrections; Erma Sedillo, Deputy Secretary of Corrections; Tim LeMaster, Deputy Director of Adult Prisons; Elmer Bustos, Division Director of Adult Prisons; Nick DeAngelo, NMCD General Counsel; James Brewster, NMCD Deputy General Counsel; Gilbert Garcia, NMCD Classification Bureau Chief; and Frank Pullara, NMCD Medical Director.  The IDOC Defendants are: Barbara Hurt, Deputy Director of Division 1; Kenneth Briley, SCC Warden; Willard Elyea, IDOC Medical Director; and Diann K. Marsalek, IDOC Chief Legal Counsel.

### FACTUAL BACKGROUND[2]

In 1978, Kinslow was sentenced by a state court in New Mexico to life in prison. (Doc. 1 at 5.) In 1995, he was transferred to Illinois pursuant to the Interstate Corrections Compact (ICC). In 2000, he became ill with a life-threatening liver disease and began receiving chemotherapy at SCC. Kinslow filed two civil rights suits against IDOC officials, claiming that he was not receiving proper medical treatment. (*Id.*) In August 2004, United States Magistrate Judge Sidney I. Schenkier presided over a settlement conference at which both suits were settled. (*Id.* at 6; Doc. 80 Ex. B at 1-3.) Judge Schenkier recited the terms of the settlement agreement in open court, and all parties agreed that the terms he recited were correct. (Doc. 80 Ex. B at 4-9.)

Judge Schenkier stated:

One term of the agreement is that Mr. Kinslow will be put on a medical hold for purposes of transfer from Stateville to any other institution within the Department of Corrections system in Illinois, meaning that he will not be transferred by the Department from Stateville to another institution in Illinois until his current course of treatment has been completed which is currently, I think, scheduled to be completed in about the spring of next year.

Another term of the agreement is that the Department will assist Mr. Kinslow in his efforts to obtain a transfer by the New Mexico authorities who have control over his incarceration to a facility either in Wisconsin, Iowa or Alabama, which Mr. Kinslow has identified as states where the medical treatment may be very good for the type of condition that he has. This agreement obligates the Department to work with Mr. Kinslow to try to facilitate a transfer to one of those states. The agreement does not guarantee a result because it's not within the control of the Department as to whether either New Mexico approves that transfer or whether those states accept a transfer, but the Department will use its efforts to cooperate in attempting to make it happen.

---

[2] The discussion of the facts in this section and of Kinslow's claims in the next section includes only those facts and claims that are relevant to the IDOC Defendants and Ghosh.

(*Id.* at 5.)  The settlement agreement further provided that certain defendants would make monetary payments to Kinslow and that Kinslow would have a meeting with Dr. Ghosh and Warden Briley within fourteen days to discuss his treatment.  (*Id.* at 4-6.)

In October 2004, before his chemotherapy was completed, Kinslow was transferred back to New Mexico.  (Doc. 1 at 7-8.)  Upon his return, he was assigned a Level VI classification and placed in administrative segregation.  (*Id.* at 8-9.)

### KINSLOW'S CLAIMS

Because Kinslow is proceeding *pro se*, his pleadings must be construed liberally.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  This means that I must overlook his "failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, [and] his unfamiliarity with pleading requirements."  *Id.*  I may not, however, assume the role of Kinslow's advocate.  *Id.*

Kinslow alleges that between January and October 2004, Briley, Marsalek, Hurt, Elyea, and Ghosh conspired with each other and with the NMCD Defendants to punish him for filing his civil rights suits.  (Doc. 1 at 6-7.)  He claims that his transfer to New Mexico and placement in administrative segregation was done pursuant to this conspiracy and in retaliation for his filing the civil rights suits.  (*Id.* at 7.)

Kinslow asserts that Briley, Hurt, Marsalek, Sedillo, Bustos, LeMaster, Garcia, Williams, Brewster, and DeAngelo further retaliated against him by conspiring to keep all of his personal and legal files and property in Illinois.  (*Id.* at 11.)  Kinslow believes that this was done to deny him meaningful access to the Illinois federal court by preventing him from properly challenging violations

of the settlement agreement.  (*Id.*)  Although he received some of the files eight months after his transfer and after paying $104.21, three boxes of legal files and law books remain at the SCC.  (*Id.* at 12.*)

Kinslow also claims that all of the defendants are retaliating against him by denying him proper and necessary medical treatment and tests recommended by Dr. Coltran, his consulting physician in Illinois.  (*Id.* at 13.)  Specifically, Kinslow alleges that "ALL PARTIES" agreed that Dr. Coltran would directly oversee his medical treatments and that they would abide by any medical recommendations he made.[3]  (*Id.* at 14.)  Shortly before the transfer, Dr. Coltran recommended that several diagnostic tests be performed on Kinslow to screen him for Crohn's disease and colo-rectal cancer.  Kinslow was transferred before any of the tests could be performed.  (*Id.*)  Finally, Kinslow claims that his chemotherapy failed because of the interruption in treatment when he was transferred, resulting in extreme pain and a shortened life expectancy.  (*Id.*)

Kinslow asserts seven causes of action.  The first two counts assert  that all of the defendants conspired to punish him in retaliation for filing the previous civil rights suits.  The third count asserts that all of the defendants violated the settlement agreement by transferring him before the completion of his chemotherapy, failing to work together to place him in one of the agreed-upon states, and refusing to perform the recommended medical testing.  The sixth count asserts that Briley, Marsalek, Hurt, Williams, and several of the NMCD Defendants denied him access to the courts.  The seventh

---

[3] Kinslow alleges that this agreement occurred at the meeting that was to be held within fourteen days after the settlement conference.  His complaint indicates that only he, Ghosh, Briley, and Marsalek attended this meeting.  (*Id.* at 13-14.)  The complaint does not explain how all of the defendants could have entered the agreement when only three of them attended the meeting.

4

count asserts a deliberate indifference claim against all of the defendants for interrupting and interfering with his medical treatment.[4]

**THE IDOC DEFENDANTS' MOTION TO DISMISS**

IDOC Defendants Briley, Hurt, and Elyea filed waivers of service in May 2006.  (Doc. 21, 23, 24.)  No answers having been filed, the Court granted Kinslow's motion to enter their default on September 18, 2006.  (Doc. 53, 60, 61.)  The Court also ordered the Marshal to personally serve Marsalek.  (Doc. 60.)  Briley, Hurt, and Elyea then filed a motion to vacate the default.  (Doc. 66.)  In addition to arguing why they believed the default should be vacated, they also asserted that the Court lacks personal jurisdiction over them.  They requested the Court to vacate the default and either dismiss the case against them for lack of personal jurisdiction or allow them to file a motion to dismiss for lack of personal jurisdiction.  After conducting a hearing, the presiding judge vacated the default.  (Doc. 72.)  She reserved ruling on the remainder of the motion, which she construed as a motion to dismiss for lack of personal jurisdiction, and gave Kinslow fifteen days to respond.  (*Id.*)  Kinslow subsequently filed his response.  (Doc. 79.)[5]

---

[4] The fourth and fifth counts apply only to the NMCD Defendants.  (*See id.* at 16-17.)  Kinslow additionally asserts that the first, second, and seventh counts constitute several state-law torts, such as conspiracy, assault and battery, and medical malpractice.  (*Id.* at 15-16, 18.)

[5] It is unclear whether Marsalek joins in the motion to dismiss for lack of personal jurisdiction.  Although the motion was brought only on behalf of the other three IDOC Defendants, it states that once Marsalek "has been served and has requested representation from the Office of the Attorney General of the State of Illinois, she will likewise be represented."  (Doc. 66 at 1.)  The motion later states that the Court lacks personal jurisdiction over "the Illinois Defendants, served and unserved."  (*Id.* at 3.)  Although the docket reflects that Marsalek was personally served on October 13, 2006 (Doc. 75), no one has entered an appearance on her behalf.  In light of my recommendation that the motion to dismiss be denied, it is unnecessary to resolve whether Marsalek joins in the motion.  For simplicity, I will refer to the movants as "the IDOC Defendants."

5

The plaintiff bears the burden of establishing personal jurisdiction if it has been contested by the defendants. *Benton v. Cameco Corp.*, 375 F.3d 1070, 1074 (10th Cir. 2004). On a pretrial motion to dismiss, however, the plaintiff need only make a prima facie showing. *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1075 (10th Cir. 1995). In determining whether the plaintiff has made his prima facie showing, all factual disputes are resolved in his favor. *Id.* The allegations in the plaintiff's complaint must be accepted as true unless the defendants submit affidavits contradicting them. *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989). Only if the defendants properly controvert the complaint's allegations must the plaintiff support the allegations with competent proof. *Id.*

When a New Mexico prisoner files a civil rights suit in New Mexico against nonresident prison officials, this Court may exercise jurisdiction over the nonresidents if the exercise of jurisdiction comports with due process. *See Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006). For the exercise of jurisdiction to comport with due process, the defendants must have had sufficient minimum contacts with New Mexico and the exercise of jurisdiction must not offend traditional notions of fair play and substantial justice. *See Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1276-77 (10th Cir. 2005). Sufficient minimum contacts exist if the defendants have purposefully directed their activities toward this state and the suit is based on activities that arise out of or relate to the defendants' contacts with the state. *Trujillo*, 465 F.3d at 1218.[6]

In his complaint, which was sworn under penalty of perjury, Kinslow claims that the IDOC Defendants entered into a conspiracy with the NMCD Defendants to retaliate against him for filing

---

[6] Sufficient minimum contacts also exist if the defendants had continuous and systematic contacts with the forum state. *See Trujillo*, 465 F.3d at 1218 n.7. Kinslow's complaint does not allege the type of continuous and systematic contacts that would be necessary to establish personal jurisdiction on this basis. *See id.*

his two previous civil rights suits.   The object of this conspiracy was to transfer Kinslow to New Mexico and have him placed in administrative segregation without any legitimate reason.   Kinslow was injured not only by being unjustly placed in administrative segregation, but also by having his treatment for a serious disease interrupted.

In their motion to dismiss, the IDOC Defendants assert, "On the face of the complaint, there is no basis for personal jurisdiction over these defendants in the [sic] New Mexico."  (Doc. 66 at 3.) They note that the ICC gave New Mexico, not Illinois, the power to have Kinslow transferred back to this state.  *See* N.M. STAT. ANN. § 31-5-17, art. 4(C). They suggest that because New Mexico "controlled the decision to transfer" Kinslow, they did not purposefully direct their activities toward this state.  (*Id.*)  This might be a winning argument were it not for the complaint's conspiracy allegations, which the IDOC Defendants completely ignore.

Personal jurisdiction over nonresident defendants may be predicated on a conspiracy between those defendants and residents of the forum state.  *See Am. Land Program, Inc. v. Bonaventura Uitgevers Maatschappij, N.V.*, 710 F.2d 1449, 1454 (10th Cir. 1983).  The mere allegation of a conspiracy, without a prima facie factual showing of a conspiracy, is insufficient to establish personal jurisdiction.  *Baldridge v. McPike, Inc.*, 466 F.2d 65, 68 (10th Cir. 1972).  To make a prima facie showing, the plaintiff must show that a conspiracy existed, that an overt act in furtherance of the conspiracy was committed in the forum state, and that the out-of-state defendants should have been aware of the overt act.  *See Am. Land Program*, 710 F.2d at 1454; *Glaros v. Perse*, 628 F.2d 679, 682 (1st Cir. 1980).

Kinslow's complaint alleges all three of these elements.  Although it does not use the term "overt act," the complaint alleges that the object of the conspiracy was to send Kinslow back to New

Mexico and unjustly place him in administrative segregation here.  I note that Kinslow's allegations regarding the forming of the conspiracy are stated "on information and belief." (Doc. 1 at 6-7.)  But the IDOC Defendants have not presented any affidavits or other evidence to deny the existence of the conspiracy.  They do not even deny the conspiracy in their unsworn motion to dismiss.  Therefore, I must accept the allegations in the complaint as true.  *See Pytlik*, 887 F.2d at 1376.

In one of the leading cases regarding the exercise of jurisdiction based on a conspiracy, the plaintiff brought suit under § 1983, claiming that resident and nonresident defendants conspired to abduct him from a religious sect in the forum state.  *See Mandelkorn v. Patrick*, 359 F. Supp. 692, 693-94 & n.4 (D.D.C. 1973) (cited in *Am. Land Program*, 710 F.2d at 1454).  The court exercised personal jurisdiction over the nonresident defendants based on the allegations of conspiracy and of the overt act of abduction in the forum state.  *See id*. at 695-97.  The court found it significant that the nonresident defendants had not denied the existence of the conspiracy, *id.* at 695, and emphasized that "the situation would be quite different . . . if the allegations of the complaint were controverted or if the facts should develop otherwise than as alleged," *id.* at 697.  *See also Dodson Int'l Parts, Inc. v. Altendorf*, 181 F. Supp. 2d 1248, 1253-55 (D. Kan. 2001) (upholding personal jurisdiction because plaintiff's verified complaint alleged a conspiracy and set forth the actions that were taken in furtherance of the conspiracy in the forum state); *cf. Am. Land Program*, 710 F.2d at 1454 (holding that plaintiff failed to establish jurisdiction when it relied on unsworn, conclusory allegations of a conspiracy to defame and defendants "countered by sworn affidavits that no conspiracy to defame existed"); *Baldridge*, 466 F.2d at 68 ("As the mere allegation of conspiracy was controverted by the affidavits presented by the alleged co-conspirators in support of their denial of the conspiracy, the trial court correctly . . . dismissed the action . . . .").

8

Similarly, accepting the complaint's allegations as true, Kinslow has demonstrated that the IDOC Defendants purposefully directed activities toward this state by conspiring to send him here. Moreover, the suit arises out of his transfer here. Therefore, the IDOC Defendants could reasonably anticipate being haled into court here. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Once it is determined that a defendant purposefully established minimum contacts with the forum state, those contacts must be considered in light of other factors to determine whether the exercise of jurisdiction comports with fair play and substantial justice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). This requires an evaluation of the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the states' shared interest in furthering fundamental substantive social policies. *Id.* at 477. When defendants who have purposefully directed their activities at forum residents seek to defeat jurisdiction, they must present a "compelling case" that these considerations render the exercise of jurisdiction unreasonable. *Id.*

The IDOC Defendants have not attempted to demonstrate that any of these considerations render the exercise of jurisdiction unreasonable. *See id.* at 482-84 (discussing defendant's failure to demonstrate that the exercise of jurisdiction would be unreasonable). In particular, they have not averred that litigating in this forum would be burdensome for them. It would seem to be more convenient and efficient to litigate the alleged conspiracy in one forum, and "New Mexico may have

a substantial and legitimate interest in adjudicating a claim of its own prisoner." *Trujillo*, 465 F.3d at 1221.[7]

Accordingly, based on the limited record and arguments before me, the IDOC Defendants' motion to dismiss for lack of personal jurisdiction should be denied.

### GHOSH'S MOTION FOR SUMMARY JUDGMENT

In his motion for summary judgment, Ghosh argues that Kinslow's claims against him are barred by collateral estoppel because Kinslow filed an unsuccessful motion in the Northern District of Illinois, alleging, as he does here, that Ghosh participated in a conspiracy to retaliate against him by transferring him to New Mexico.  (Doc. 80.)[8]

Collateral estoppel "attaches only when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment." *Arizona v. California*, 530 U.S. 392, 414 (2000) (internal punctuation and citation omitted).  The Tenth Circuit has reduced the requirements for collateral estoppel to four elements: 1) the issue previously decided is identical with the one presented in the current action; 2) the prior case has been

---

[7] In *Trujillo*, the Tenth Circuit upheld this Court's decision that personal jurisdiction was lacking over Virginia prison officials in a suit by a New Mexico prisoner who was transferred to Virginia pursuant to the ICC.  465 F.3d at 1216-22.  In that case, the Virginia officials' only contacts with New Mexico were the receipt of a New Mexico prisoner and the implementation of New Mexico's prisoner policies pursuant to the ICC.  *Id.* at 1219.  "All relevant conduct by the Virginia defendants occurred in Virginia, without any indication that their acts were either aimed at or had effect in New Mexico."  *Id.* at 1220 (internal quotation marks and citations omitted).

[8] Ghosh also argues that res judicata bars any claims Kinslow may be bringing against him regarding medical care in Illinois.  As I read Kinslow's complaint, it does not raise any claims regarding  medical care before the settlement agreement.  This reading is confirmed by Kinslow's response to the summary judgment motion.  In that response, Kinslow summarizes his claims against Ghosh, leaving out any claim regarding his medical care before the settlement agreement.  (Doc. 83 at 2; *see also id.* at 3-4.)  Accordingly, I find it unnecessary to address Ghosh's res judicata argument.

finally adjudicated on the merits; 3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior case; and 4) the party against whom the doctrine is invoked had a full and fair opportunity to litigate the issue in the prior case. *Burrell v. Armijo*, 456 F.3d 1159, 1172 (10th Cir. 2006), *cert. denied*, 127 S. Ct. 1132 (2007). Kinslow argues that the first, second, and fourth elements have not been satisfied here.

Collateral estoppel is an affirmative defense. *See* FED. R. CIV. P. 8(c); *Fed. Ins. Co. v. United States*, 618 F.2d 661, 663 (10th Cir. 1980). Therefore, Ghosh has the burden of establishing all four elements. *Farmland Indus. v. Morrison-Quirk Grain Corp.*, 987 F.2d 1335, 1339 (8th Cir. 1993). In the summary judgment context, this means that Ghosh has the initial burden of demonstrating that there is no material fact issue regarding collateral estoppel. *Johnson v. Riddle*, 443 F.3d 723, 724 n.1 (10th Cir. 2006); *see also* FED. R. CIV. P. 56(c). If Ghosh meets this burden, the burden shifts to Kinslow to demonstrate with specificity the existence of a disputed material fact. *Id.*

For purposes of summary judgment, a prisoner's complaint is treated as an affidavit if it alleges facts based on his personal knowledge and has been sworn under penalty of perjury. *Hall*, 935 F.2d at 1111. When deciding whether to grant summary judgment, the Court must view the record and all reasonable inferences therefrom in the light most favorable to the nonmovant. *Muñoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000).

The record reflects that in November 2004, Kinslow filed in the Northern District of Illinois a "Memorandum of Facts/Law in Support of Notice to the Court of the Deliberate Violation of the August 27, 2004 Settlement Agreement Terms by the Defendants, With a Request for a Rule 60

Reinstatement of the Lawsuits, and a Request for Video Hearing." (Doc. 80 Ex. D.) In this motion,

Kinslow recounted his transfer to New Mexico and stated:

> [T]he Illinois IDOC, Illinois Medical and New Mexico Officials and defendants
> entered into a "conspiracy" together whereby the plaintiff would be transferred before
> the full completion of his current medical treatments, in clear, knowing and deliberate
> violations of the Settlement Terms, knowing that it would then interrupt and possibly
> sabotage the plaintiff's medical treatments for a serious disease for no legitimate
> penological or medical reason.

(*Id.* Ex. D at 2.) He asserted that these actions were taken "to retaliate against and punish [him] for

filing his § 1983 Civil Rights Complaints by . . . throwing him into . . . New Mexico's 'Level VI'

Super Max Facility in clear violation of . . . the U.S. Constitution." (*Id.*) Kinslow requested that both

of his suits be reinstated, that the defendants be sanctioned or fined, and that he be granted "the

opportunity to Amend these latest federal Civil Rights violations into his Complaint and to add

defendants." (*Id.* at 3.)

Noting that Rule 60 was inapplicable because a final judgment had not yet been entered, Judge

Schenkier construed Kinslow's motion as "one to rescind the settlement agreement." (*Id.* Ex. E.)

He pointed out that the settlement terms only prohibited Kinslow's transfer to another facility in

Illinois and required the IDOC to work with Kinslow to obtain New Mexico's approval for a transfer

to Wisconsin, Iowa, or Alabama. The agreement expressly did not "guarantee a result." (*Id.*) Judge

Schenkier then concluded:

> The Department did not violate its agreement to refrain from transferring plaintiff to
> another Illinois facility pending the completion of his course of medical treatment.
> Nor is there any evidence that the Department failed to attempt to facilitate his
> transfer to an institution in Wisconsin, Iowa or Alabama; to the contrary, the
> Department has offered evidence showing that it did attempt to facilitate such a
> transfer . . . . The possibility that the effort might be unsuccessful was specifically

> contemplated by the parties in the agreement; the fact that this possibility became a
> reality in no way constitutes a violation of the agreement.

(*Id.*)   Judge Schenkier also observed that the ICC granted New Mexico the prerogative to order Kinslow transferred back to this state.  (*Id.*)  He denied Kinslow's motion "and the related relief he [sought] in that request."  (*Id.*)

In this case, Kinslow's third count asserts that all of the defendants violated the settlement agreement.  As it relates to Ghosh, this count stems entirely from his transfer back to New Mexico. In his Illinois motion, Kinslow specifically asserted that the transfer violated the settlement agreement, and Judge Schenkier ruled that it did not.  Judge Schenkier's decision demonstrates that Kinslow had a full and fair opportunity to litigate this issue.  Evidence was presented on the issue and considered by Judge Schenkier, who articulated his reasoning for ruling against Kinslow on the issue.  As to this issue, it does not appear that any more elaborate procedures were necessary.  It was undisputed that Kinslow had been transferred.  Whether the transfer violated the settlement agreement was essentially a matter of contractual interpretation.  Accordingly, Kinslow should be collaterally estopped from maintaining his third count against Ghosh.

Kinslow's first and second counts assert that all of the defendants violated his constitutional rights by conspiring to punish him in retaliation for filing the previous civil rights suits.  His seventh count asserts that all of the defendants were deliberately indifferent to his serious medical needs. These three counts also include state tort claims.  Like the third count, all three of these counts—at least as they relate to Ghosh—arise from Kinslow's transfer.  Ghosh therefore argues that Kinslow should be collaterally estopped from maintaining these counts against him as well.

13

Ghosh correctly points out that Kinslow asserted in his Illinois motion that the transfer resulted from a conspiracy to punish him for filing the earlier suits. Ghosh also correctly points out that Judge Schenkier denied the motion. This is insufficient, however, to demonstrate that identical issues were fully and fairly adjudicated on the merits.

"Adjudication on the merits requires that the adjudication be necessary to the judgment." *Murdock v. Ute Indian Tribe*, 975 F.2d 683, 687 (10th Cir. 1992). The party asserting collateral estoppel bears the burden of showing with clarity and certainty what was determined by the prior judgment. *Postlewaite v. McGraw-Hill*, 333 F.3d 42, 49 (2d Cir. 2003); *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000).

In his Illinois motion, Kinslow sought both to reinstate his suits based on the purported violation of the settlement agreement and to amend his complaint to include new defendants and new civil rights violations arising from the allegedly retaliatory transfer. Contrary to the statements in Ghosh's summary judgment motion and reply, Judge Schenkier did not hold "that there was no evidence of any conspiracy" or that "there was no retaliation." (*See* Doc. 80 at 3; Doc. 86 at 3.) In fact, Judge Schenkier's decision does not even mention the allegations of conspiracy and retaliation.

To determine whether Kinslow's suits should be reinstated because the transfer violated the settlement agreement, it was unnecessary for Judge Schenkier to consider whether there was a conspiracy to retaliate. His decision on this issue was based solely on the language of the agreement and of the ICC, neither of which prohibited Kinslow's transfer back to New Mexico. *Cf. Smith v. Maschner*, 899 F.2d 940, 948 (10th Cir. 1990) (stating that prison officials may not take actions

against a prisoner to retaliate against him for exercising his constitutional rights even if the actions would otherwise be permissible).

Although he denied the "related relief" sought in Kinslow's motion, Judge Schenkier did not specifically address his request to amend his complaint to include new defendants and new civil rights violations.  Presumably, Kinslow wanted to include the claims for retaliation and deliberate indifference that he now brings in the first, second, and seventh counts.  If the denial of the Illinois motion constitutes an adjudication of the merits of these claims and Kinslow was afforded a full and fair opportunity to litigate them, he would be collaterally estopped from raising them now.

Whether the denial of a motion to file a supplemental complaint has any preclusive effect depends on whether the denial was based on a consideration of the merits of the supplemental complaint.  *See Flaherty v. Lang*, 199 F.3d 607, 613-16 (2d Cir. 1999).[9]  As noted above, Judge Schenkier did not mention Kinslow's allegations of conspiracy and retaliation.  He also did not mention the allegations that the transfer would cause the failure of his treatment, resulting in early death.  He gave no reasons for denying the request to amend.  The only aspect of Judge Schenkier's decision that could arguably relate to the alleged conspiracy to retaliate is the comment that IDOC offered evidence showing that it attempted to facilitate a transfer to Wisconsin, Iowa, or Alabama.  Based on this comment, it is conceivable that Judge Schenkier concluded that there was no conspiracy to retaliate.  But it is impossible to be sure.  Therefore, collateral estoppel should not

---

[9] Although Kinslow used the word "amend," he should have used the word "supplement" because he sought to add allegations regarding events that happened after his original complaints were filed.  *See* FED. R. CIV. P. 15(d); *Flaherty*, 199 F.3d at 613 n.3.  Because Kinslow was acting *pro se*, this incorrect nomenclature must be disregarded.  *Hall*, 935 F.2d at 1110.

apply.  *See Burrell*, 456 F.3d at 1173 (indicating that plaintiffs did not have a full and fair opportunity to litigate partly because the first court's order contained no explanation of its reasoning); *Flaherty*, 199 F.3d at 615-16 (holding that defendants did not meet their burden of showing a full and fair opportunity to litigate retaliation claims that the plaintiff had attempted to assert in a supplemental complaint in a prior action because the basis for the court's denial of the motion to supplement was "not readily apparent"); *McNellis v. First Fed. Sav. & Loan Ass'n*, 364 F.2d 251, 256-57 (2d Cir. 1966) (holding that claim raised in a supplemental complaint in a prior action was not litigated on the merits because the basis for the court's denial of the motion to supplement was not clear).  This is particularly true considering Kinslow's *pro se* status.  *See Flaherty*, 199 F.3d at 616 ("Our reluctance to foreclose Flaherty from litigating his retaliation claims rests . . . in part on Flaherty's *pro se* status.").[10]

## CONCLUSION

For the reasons stated above, I recommend that the IDOC Defendants' motion to vacate (Doc. 66) be denied to the extent that it has been construed as a motion to dismiss for lack of

---

[10] Although I have not found an analogous published case from the Tenth Circuit, an unpublished case contains persuasive reasoning.  *See Entrup v. Colorado*, No. 93-1454, 1994 WL 396048 (10th Cir. July 29, 1994).  In that case, the plaintiffs filed a *pro se* motion for new trial, raising constitutional objections to a state court proceeding.  The state judge summarily denied the motion "as not timely, and . . . on the merits as well."  *Id.* at *1.  The plaintiffs then filed a civil rights action in federal court, asserting the same constitutional issues.  Despite the state court's reference to "the merits," the Tenth Circuit held that collateral estoppel did not apply.  *Id.* at *3.  After considering the standards applicable to new trial motions in the state court, the Tenth Circuit stated: "[U]nder one legally sound and plausible interpretation of the state court's ruling, the substance of the claims now reasserted in federal court would not have been at issue.  Thus, any conclusion that the state court actually addressed and necessarily rejected these claims on the merits would necessarily rest on impermissible speculation."  *Id.*

16

jurisdiction.  I further recommend that Ghosh's motion for summary judgment (Doc. 80) be granted

as to Kinslow's third count and denied as to all other counts.

> **THE PARTIES ARE NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy
> of these Proposed Findings and Recommended Disposition they may file written objections with the
> Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1).  **A party must file any objections
> with the Clerk of the District Court within the ten-day period if that party wants to have
> appellate review of the Proposed Findings and Recommended Disposition.  If no objections are
> filed, no appellate review will be allowed.**

WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.          17