# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JIMMY KINSLOW,

                Plaintiff,

v.        CV 05-1324 JH/WPL

JOE WILLIAMS, ET AL.,

                Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This case is before me on Plaintiff Jimmy Kinslow's motion for leave to file an amended complaint, Defendant Partha Ghosh's motion for summary judgment and motion to strike, and related responses and replies.[1]

### MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Federal Rule of Civil Procedure 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." The rule supports the policies of ensuring that related claims are litigated in a single action and of providing the maximum opportunity for claims to be decided on their merits. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006); *Arkansas-Platte & Gulf P'ship v. Dow Chem. Co.*, 886 F. Supp. 762, 765 (D. Colo. 1995). Leave may be denied because of undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Minter*, 451 F.3d at 1204.

---

[1] The factual and procedural background of this suit has been detailed in two previous PFRDs. (Doc. 116, 122.)

Kinslow's original complaint contains seven counts. Count seven alleges that all of the defendants were deliberately indifferent to his serious medical needs in two ways. First, Kinslow claims that the treatment of his liver disease failed because of the interruption in treatment when he was transferred from Illinois to New Mexico, resulting in extreme pain and a shortened life expectancy. (Doc. 1 at 14, 17-18.) Second, Kinslow claims that shortly before his transfer to New Mexico, his Illinois consulting physician recommended that several diagnostic tests be performed to screen him for Crohn's disease and colo-rectal cancer.[2] (*Id.* at 13-14, 17-18.) Kinslow was transferred before any of the tests could be performed, and he claims in the original complaint that the NMCD Defendants have refused to perform the tests. (*Id.* at 14.)

Kinslow's amended complaint starts with count seven. This count, like count seven of the original complaint, alleges that Kinslow's treatment failed because it was interrupted during the transfer. The amended complaint fleshes out some of the factual details that support this deliberate indifference claim, but the only significant difference between the original count seven and the amended count seven is that the amended count adds Shannon McReynolds, General Manager of the New Mexico Department of Corrections, as a defendant. (Doc. 132 at 4-6.)[3]

Similarly, count ten of the amended complaint, like count seven of the original complaint, alleges that the tests recommended by Dr. Cotler have not been performed. (*Id.* at 16-17.) The only significant difference between the original count seven in this regard and the new count ten is that the amended complaint identifies four new defendants as the persons who refused to authorize the

---

[2] The original complaint states that the consulting physician's name is Dr. Coltran. (Doc. 1 at 13.) In the amended complaint, the consulting physician's name is stated to be Dr. Cotler. (Doc. 132 at 4.)

[3] Kinslow also continues to claim that his transfer violated the Illinois settlement agreement. (Doc. 132 at 5.) This claim has already been dismissed as to all defendants. (Doc. 116, 120, 122, 124, 129.)

tests. (*Id.* at 17.) These defendants are: Wexford Medicine in Corrections, Inc., which provides medical care to New Mexico prisoners; Manuel Tan, a contract physician employed by Wexford as the Medical Director of the Southern New Mexico Correctional Facility; and Phillip Breen and Rosemary Beck, Regional Medical Directors for Wexford. (*Id.* at 3, 17.)

In his motion for leave to file the amended complaint, Kinslow states that the amended complaint names "additional defendants identified through discovery provided by defendants and investigation." (Doc. 132 at 1.) It is clear, however, that Kinslow has been aware of McReynolds' role in his transfer for more than a year. In July 2006, Kinslow filed suit in Illinois against McReynolds and others, claiming that his treatment for hepatitis C failed because he was not provided with proper medical care during his transfer. In December 2006, the district court dismissed the suit as to McReynolds and the other NMCD officials without prejudice for lack of personal jurisdiction. *See Kinslow v. Transcor America, LLC*, No. Civ. A 06 C 4023, 2006 WL 3486866 (N.D. Ill. Dec. 1, 2006) (unpublished).

On June 27, 2007, Kinslow filed a motion for a pretrial conference in this case, stating that he needed my advice or guidance "for a procedural problem involving an Amended Complaint." (Doc. 125.) After I denied this motion (Doc. 130), Kinslow filed his motion for leave to file the amended complaint on August 13, 2007 (Doc. 132). Kinslow provides no explanation for the delay in seeking to add McReynolds as a defendant, and his suggestion that he only recently learned of her through discovery in this case is obviously baseless.

Kinslow has been on notice of the role the other new defendants played in his medical care for quite some time as well. On August 16, 2006, the NMCD Defendants filed a response to Kinslow's motion for a temporary restraining order. (Doc. 52.) Attached to the response was a memorandum on "Wexford Medicine in Corrections" letterhead, which stated that Kinslow was

3

Case 1:05-cv-01324-JCH-WPL   Document 150   Filed 10/30/07   Page 4 of 14

medically stable as of August 8, 2006.  The memorandum was written by "Manuel Tan MD[,] Medical Director," and a carbon copy of the memorandum was sent to "Phillip Breen, MD[,] Wexford Regional Medical Dir [sic]." (*Id.*)  Because Kinslow contended that he did not receive the NMCD Defendants' response, I ordered the Clerk of Court to send it to him on November 2, 2006. (Doc. 65, 77.)  Kinslow's request for a ruling on his motion for a temporary restraining order contains another indication that Kinslow knew that Wexford was in charge of his medical care.  In that document, Kinslow stated that he was being denied medical care by "private medical service providers." (Doc. 58.)  The request for a ruling was filed on September 11, 2006.  On February 20, 2007, Kinslow provided to the Court a memorandum about his medical care written on Wexford letterhead.  (Doc. 102.)  The exhibits to the NMCD Defendants' response to Kinslow's objections to the *Martinez* report also contain several references to Wexford, Tan, Breen, and Beck.  (Doc. 115 Ex. C, D, F.)  Kinslow received these exhibits on April 18, 2007.  (Doc. 118.)  Again, Kinslow does not explain why he waited so long to add these defendants.

Rule 15(a) does not restrict the ability to amend to a particular stage in the suit; therefore, delay in itself cannot justify denial of leave to amend.  *Minter*, 451 F.3d at 1205.  But the longer the delay, the more likely that denial of leave will be justified.  *Id.*  Leave may be denied when the party seeking to amend offers no adequate explanation for the delay.  *Id.* at 1206.  Because Kinslow has not offered an adequate explanation for the delay in adding the new defendants, I recommend that his motion for leave to file an amended complaint be denied as to counts seven and ten.

Counts eight and nine of the amended complaint, like count seven of the original complaint, contain deliberate indifference claims.  Count eight alleges that Kinslow was deprived of adequate medical care during his transfer from Illinois to New Mexico.  He was forced to administer his medications to himself and was not provided with proper storage for the medication.  According to

4

Kinslow, these deficiencies caused the treatment to fail and also caused him immediate adverse side effects. (Doc. 132 at 8-11.) Kinslow alleges that several of the original NMCD Defendants, along with Ghosh and McReynolds, were responsible for the lack of adequate medical care during the transfer. (*Id.* at 7-8.) These allegations are nearly identical to the allegations in his Illinois suit, which was filed in July 2006. *See Kinslow*, 2006 WL 3486866, at *1-2. Kinslow offers no explanation for the delay in making these allegations in this suit. Therefore, the motion for leave to amend should be denied as to count eight.

Kinslow alleges in count nine of the amended complaint that Dr. Cotler ordered that he receive treatment for eighteen months if his viral load fell below a certain level by the twenty-fourth week of treatment. (Doc. 132 at 12.) Kinslow claims that his viral load fell below the targeted level, but Defendant Pullara, along with new Defendants Breen, Beck, and Wexford, nevertheless terminated his treatment after only one year. (*Id.* at 13.) Kinslow asserts that the treatment failed because it was terminated too early and that these Defendants are now denying him further treatment based on the failure of the earlier treatment. (*Id.* at 13-14.)

In his original complaint, Kinslow only alleged that the treatment was supposed to last for one year. (Doc. 1 at 5.) He now indicates that he did not know that his treatment was to last for eighteen months until he received his medical records from Illinois. (Doc. 136 at 1.) He contends that the defendants refused to produce these records through discovery, so he had to obtain them from "a third-party attorney in Illinois." (*Id.*) Kinslow has submitted a copy of a report by Dr. Cotler that contains the eighteen-month recommendation. Kinslow swears to the report's authenticity "under 28 U.S.C. § 1746." (*Id.*) The report reflects that it was printed on May 31, 2007. (*Id.* Ex. A.)

5

The file in this case generally supports Kinslow's contention that the NMCD Defendants refused to comply with his discovery requests. (*See, e.g.,* Doc. 85.) I have also noted that the NMCD Defendants did not attach any Illinois medical records to their *Martinez* report. (*See* Doc. 122 at 34.)

There has been no undue delay in seeking to amend the complaint in this regard. Kinslow first indicated that he wanted to amend his complaint less than a month after Dr. Cotler's report was printed. (Doc. 125.) I declined to give him any advice about amending his complaint on July 27, 2007. (Doc. 130.) He then filed his motion for leave to amend on August 13, 2007. (Doc. 132.)

Moreover, Pullara has not responded to Kinslow's motion for leave to file an amended complaint and thus has not attempted to demonstrate prejudice.[4] No prejudice is apparent. Prejudice will typically be found only if the amendment would unfairly affect the opposing party's ability to prepare a defense to the amendment. *Minter*, 451 F.3d at 1208. This usually occurs when the amended claims arise out of a different subject matter from what was set forth in the original pleading and raise significant new factual issues. *Id.* Kinslow's original claims regarding his medical care are still pending. I ordered the NMCD Defendants to file a motion for summary judgment on the remaining claims by September 10, 2007, but they failed to do so. (Doc. 130.) Kinslow's new allegation that his treatment failed because it was cut short is closely related to his allegation that the treatment failed because it was interrupted during his transfer. Accordingly, I recommend that Kinslow's motion for leave to file an amended complaint be granted to add the allegations in count nine as to Defendant Pullara only.

---

[4] None of the NMCD Defendants filed a response to Kinslow's motion. Although Ghosh filed a response in opposition to the amendment (Doc. 135), count nine does not include any allegations against him.

Count eleven of the amended complaint states a claim for denial of access to the courts. Kinslow alleges that several of the NMCD Defendants are responsible for failing to maintain an adequate prison law library. (Doc. 132 at 19.) In particular, he contends that due to his lack of access to case law, he could not prevent the dismissal of his Illinois cases, appeal the dismissal of those cases, obtain temporary injunctive relief in this case, defend against my summary judgment recommendation, or appeal the recommended summary judgment. (*Id.* at 20.) He further contends that the inadequate library prevents him from knowing what his rights are. (*Id.* at 19-20.)

Count six of Kinslow's original complaint also stated a claim for denial of access to the courts. (Doc. 1 at 11-12, 17.) In that count, Kinslow asserted that he could not prevent the dismissal of his Illinois cases because he lacked access to his legal files. In his motion for partial summary judgment, he additionally argued that the NMCD Defendants denied him an adequate law library and that he was unable to appeal the dismissal of his Illinois cases because he did not have his files. (Doc. 101 at 15-16, 18-20.) I recommended that summary judgment be granted in favor of the NMCD Defendants on count six because Kinslow failed to show that the dismissal of his cases was logically related to the absence of his legal files. I also noted that the additional arguments raised in the motion for partial summary judgment need not be considered, but that in any event, Kinslow failed to establish actual injury. (Doc. 122 at 21-23.)

The presiding judge adopted my recommendations and dismissed Kinslow's original claim for denial of access to the courts. (Doc. 124.) Thus, it appears that Kinslow is now attempting to make the complaint a "moving target," "salvage a lost case" through new theories, and present "theories seriatim." *Minter*, 451 F.3d at 1206 (internal quotation marks and citations omitted). It further appears that he has always been aware of his right to an adequate law library. The third document filed in this case—a motion for appointment of counsel—contained complaints about the

7

prison law library and his lack of access to it. (Doc. 3.) Kinslow continued to criticize the law library in subsequent documents, but did not seek to add this criticism as a cause of action until now. (*See, e.g.,* Doc. 10, 79, 83, 100.)[5] He does not explain why he delayed raising this claim.

More importantly, amending the complaint to add count eleven would be futile. Amending a complaint is futile if the complaint, as amended, would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment. *Watson v. Beckel*, 242 F.3d 1237, 1239-40 (10th Cir. 2001).

As I explained in an earlier PFRD (Doc. 122 at 21), to establish standing for a claim of denial of access to the courts, a plaintiff must show that his claim was not frivolous and that the reason for its failure was logically related to the impediment created by the defendants. *See Simkins v. Bruce*, 406 F.3d 1239, 1244 (10th Cir. 2005). Because the dismissal of the Illinois cases was primarily based on a straightforward reading of an unambiguous settlement agreement, Kinslow cannot show that the dismissal was logically related to his lack of access to case law. (*See* Doc. 116 at 10-14.) Nor can he show that his failure to file an appeal was logically related to the lack of case law in the prison library. As I indicated in the previous PFRD (Doc. 122 at 21 n.11), Kinslow did not need any particular materials to file a notice of appeal. *See* FED. R. APP. P. 3(c)(1); *see also Smith v. Bruce*, 91 F. App'x 100, 103 (10th Cir. 2004) (unpublished) ("Plaintiff did not need access to a law library to prepare a notice of appeal, as it only had to contain very general information regarding the trial court proceedings."). Furthermore, an appeal of the dismissal would have been frivolous.

---

[5] In evaluating Kinslow's claims throughout these proceedings, I have taken into consideration that he is acting pro se, is not a lawyer, and is incarcerated. As required by precedent, I have construed his claims liberally, held his pleadings to a less stringent standard than those drafted by lawyers, and excused any failure to cite proper legal authority, his confusion of legal theories, and his unfamiliarity with pleading requirements. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Kinslow also cannot show that his failure to prevail on the motions for temporary injunctive relief or for summary judgment was logically related to the inadequate law library. In his motion and memorandum for a temporary restraining order (Doc. 48, 49), Kinslow cited and applied the correct legal standard. *See McClendon v. City of Albuquerque*, 272 F. Supp. 2d 1250, 1253 (D.N.M. 2003). He also cited applicable law in his objections to my summary judgment recommendation and in his objections to the *Martinez* report (which constituted the basis for my summary judgment recommendation). (*See* Doc. 100, 123.) Indeed, despite his contention that he does not have access to case law, Kinslow has cited relevant case law throughout these proceedings. The Supreme Court has made it clear that although prisoners cannot be shut out of court, this right of access does not guarantee the effective presentation of civil claims. *Pruitt v. Mote*, ___ F.3d ___, ___, 2007 WL 2850448, at *8 (7th Cir. Oct. 3, 2007); *see also Lewis v. Casey*, 518 U.S. 343, 354 (1996).

As for Kinslow's allegation that the inadequate law library prevents him from learning about his rights, the right of access to the courts does not encompass the ability to discover grievances. *Lewis*, 518 U.S. at 354. For these reasons, count eleven would be subject to dismissal, so allowing Kinslow to add that count to his complaint would be futile.

## MOTION FOR SUMMARY JUDGMENT

Summary judgment should be granted when the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The record and all reasonable inferences therefrom must be viewed in the light most favorable to the nonmovant. *See Muñoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000).

Kinslow has three claims remaining against Ghosh: counts one, two, and seven of the original complaint. (Doc. 130.) Counts one and two allege that Ghosh participated in a conspiracy

to retaliate against him for filing the Illinois suits by transferring him to New Mexico. (Doc. 1 at 15-16.) Count seven, as described above, alleges that Ghosh was deliberately indifferent to his serious medical needs. (*Id.* at 17-18.) Kinslow also alleges within these counts that Ghosh's actions constituted several state-law torts. I have previously noted that "all three of these counts—at least as they relate to Ghosh—arise from Kinslow's transfer" from Illinois to New Mexico. (Doc. 116 at 13.)

In connection with his motion for summary judgment, Ghosh has submitted an affidavit stating that he never requested or suggested to anyone that Kinslow should be transferred to another facility and he had no role in the decision to transfer Kinslow to New Mexico. (Doc. 139 Ex. A.) He is not normally consulted regarding the mode of transporting a prisoner who is being transferred and he was not consulted about the mode of transport for Kinslow. (*Id.*) Ghosh also states that if Dr. Cotler made his recommendations on September 30, 2004, there would not have been enough time to schedule the recommended tests before Kinslow's transfer on October 17, 2004. (*Id.*)

To counter Ghosh's motion and affidavit, Kinslow relies on a letter to him from Erma Sedillo, NMCD Deputy Secretary of Operations. In the letter, Sedillo informs Kinslow that he was "returned to New Mexico at the request of Illinois officials" and that "Illinois demanded that New Mexico take [him] back." (Doc. 141 Ex. 2.)[6] The letter does not name Ghosh as one of the IDOC officials who sought Kinslow's transfer. More importantly, there is no evidence that Ghosh is an

---

[6] In his motion to strike (Doc. 142), Ghosh does not contest the authenticity of the letter, but moves to strike it on the ground that the quoted portions are hearsay. It is debatable whether these portions are hearsay. *See* FED. R. EVID. 801(c) advisory committee notes ("If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay.") Because the letter does not assist Kinslow in any event, I have considered it without regard to whether it may be inadmissible on hearsay or other grounds.

IDOC official.[7]  At an earlier stage of this litigation, Kinslow relied on an affidavit by Frank Pullara, the NMCD Medical Director.  (*See* Doc. 122 at 16-17.)  That affidavit makes clear that Dr. Elyea, the IDOC Medical Director, was the IDOC official who contacted Pullara regarding Kinslow's transfer.  (Doc. 108 Ex. 1.)  Although Pullara also states in the affidavit that he got the "distinct impression" from Elyea that some unnamed "Illinois Department of Corrections officials actually wanted Mr. Kinslow removed from their facility and potentially returned to New Mexico" (*id.*), as noted above, there is no evidence that Ghosh is an IDOC official.  Pullara goes on to indicate that he directed McReynolds to have Kinslow returned to New Mexico because Kinslow's treatment would be more economical here.  (*Id.*)  Thus, the evidence demonstrates that Pullara or Elyea, rather than Ghosh, was responsible for having Kinslow transferred to New Mexico.

Kinslow also relies on his own affidavit.  In paragraphs six, seven, nine, and ten of the affidavit, he avers that "IDOC officials, along with Dr. Ghosh, initiated contact with the New Mexico Corrections Department to DEMAND that they transfer me back to New Mexico" and that Ghosh failed or refused to institute any procedures to ensure that his medical needs would be met during the transfer, despite having knowledge that Kinslow's medical needs would not be met unless such procedures were instituted.  (Doc. 141 Ex. 1.)

In his motion to strike, Ghosh asserts that these statements should be stricken from Kinslow's affidavit because the affidavit does not demonstrate that the statements are based on personal knowledge. In a summary judgment proceeding, affidavits must be made on personal

---

[7] The record reflects that medical services were provided by Addus Healthcare, a private contractor, at the Illinois prison where Kinslow was incarcerated.  (Doc. 80 Ex. A, B.)  The IDOC Defendants were represented in this suit and in the Illinois suits by the Attorney General of Illinois, whereas Ghosh and the other medical personnel at the prison have been represented by private attorneys.  (Doc. 31, 66, 80 Ex. B.)

knowledge, must set forth facts that would be admissible in evidence, and must show that the affiant is competent to testify to the matters stated in the affidavit. FED. R. CIV. P. 56(e). Under this rule, an affidavit is inadmissible if the witness could not have actually perceived or observed that to which he testifies. *Argo v. Blue Cross & Blue Shield*, 452 F.3d 1193, 1200 (10th Cir. 2006). Statements of mere belief must be disregarded. *Id.*

In this case, there is no foundation for Kinslow's assertion that Ghosh initiated contact with the NMCD Defendants to demand that Kinslow be transferred, nor for the assertions that Ghosh knew that Kinslow's medical needs would not be met during the transfer and deliberately failed or refused to see that his medical needs would be met. Because there is nothing to demonstrate that Kinslow has personal knowledge of these matters, paragraphs six, seven, nine, and ten of the affidavit should be stricken. *See id.* (upholding district court's striking of portion of affidavit because the affiant "simply was not in a position to acquire such . . . knowledge").

Finally, Kinslow relies on the timing of the transfer, which occurred shortly after his suits against Ghosh and certain IDOC officials were settled. In the face of the unrefuted evidence that Ghosh had no part in the transfer, the suspicious timing of the transfer alone is insufficient to create a fact issue regarding Ghosh's culpability.

The defendant's personal participation in the challenged act is an essential allegation in a § 1983 claim. *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). Similarly, causation is an essential element of state torts. *See, e.g., Peralta v. Martinez*, 564 P.2d 194, 200 (N.M. Ct. App. 1977), *abrogated on other grounds by Maestas v. Zager*, 152 P.3d 141 (N.M. 2007). Therefore, whether Ghosh had a role in Kinslow's transfer is material to Kinslow's claims against Ghosh. Kinslow has submitted no competent summary judgment evidence that Ghosh was in any way

responsible for his transfer, while Ghosh has presented evidence that he had nothing to do with it. Because there is no genuine dispute as to this material fact, summary judgment should be granted in Ghosh's favor as to all of Kinslow's claims.[8]

## CONCLUSION

For the reasons stated above, I recommend that:

1) Kinslow's motion for leave to file an amended complaint be granted to add the allegation that Defendant Pullara terminated his treatment for hepatitis C too early, causing the treatment to fail;

2) the motion for leave to file an amended complaint be denied in all other respects;

3) Ghosh's motion to strike be granted to the extent that paragraphs six, seven, nine, and ten of Kinslow's affidavit are stricken;

4) Ghosh's motion to strike be denied without prejudice in all other respects; and

5) Ghosh's motion for summary judgment be granted and Kinslow's claims against Ghosh be dismissed with prejudice.

**THE PARTIES ARE NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1). **A party must file any objections with the Clerk of the District Court within the ten-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

---

[8] Kinslow requests in his response to the summary judgment motion that counsel be appointed to help him secure expert medical testimony that he should not have been transferred. Ghosh requests in his motion to strike that averments in Kinslow's affidavit regarding his medical condition be stricken. Because summary judgment can be granted on the basis of Ghosh's lack of involvement with the transfer, it is unnecessary to appoint counsel or to consider whether Kinslow's averments regarding his medical condition should be stricken.

*[signature: William P. Lynch]*

WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.

14